Isaac T. Preston, Testamentary Executor of Robert Layton, deceased, *v.* Walter Brashear.

To recover money paid, under a commutative contract, to a party thereto, the latter must be put *in mora.* C. C. 1906 to 1920.

Appeal from the District Court of St. Mary, *King, J.*

*I. E. Morse* and *Nicholls,* for the appellant.

*W. C. Dwight,* for the defendant.

Morphy, J. The petitioner, in his representative capacity, seeks to recover back from the defendant $1250, which he alleges was paid by his testator, the late Robert Layton, without any consideration whatever. He represents that the defendant, and a certain Thomas B. Warfield, as agent of the heirs of one R. R. Barr, covenanted and agreed to lay out and establish, according to a notarial act executed on the 20th of March, 1837, a commercial city or town, on the *Golden Farm,* a tract of land belonging to them, to be known as the town of *Far West,* and which town was to be forthwith, after the passing of said notarial act, divided into streets, squares, lots, &c., by the said Brashear and Warfield. That on the representation of the advantages of said city, the deceased, R. Layton, was induced to make his note to the order of defendant, for said sum of $1250, which note he has since paid, and thereby became entitled to the quarter of a share in the

town of *Far West*. That the defendant, who has acquired all the rights of Warfield, and assumed all his liabilities as regards the *Golden Farm*, and the city of *Far West*, has neglected and refused to comply with any of the obligations specified in his act of foundation of said city; that it is now to late to comply with the same; and that the defendant has placed it out of his power to do so, &c. The defendant denies that he he has ever refused to comply with any of his obligations, as specified in the notarial act mentioned by the plaintiff, or that it is too late, or that he has placed it out of his power to comply with them. He avers that he has always been willing and ready, and is now willing and ready to convey to plaintiff one fourth part of one share in the land in question, but has never been requested to do so; that he has long since laid off said land into town lots, at his own private expense, and had a plat made of the same several years since, although he was not bound to do it until requested by the subscribers or stockholders; that he has always been ready to convey his land to trustees, as provided for in the notarial act, and to perform each and every obligation therein set forth; but that this suit is the only notice he ever received from any quarter that plaintiff had any wish that the land should be conveyed to him. The defendant further avers, that the plaintiff's testator paid his note two years after its date, without any error, fraud, violence, or threat being used to obtain said note or its payment, and that he has no right or action to recover the amount so paid, but can only claim the execution of the contract, which defendant has always been ready to perform. There was a judgment of nonsuit below, from which the plaintiff has appealed.

It appears from the notarial act, that the defendant and Warfield were to lay off a certain plantation on Berwick's Bay as a town, and to divide and subdivide it into squares and lots according to a plan to be made thereof, said town to be called *Far West* on said plan. A joint stock of this land was to be made to be divided into ten shares, of five thousand dollars each share, valuing the whole at fifty thousand dollars. Each stockholder, on receiving his certificate, was to furnish a promissory note made to the order of Brashear and Barr. Immediately after the shares were all taken and notes deliver-

ed therefor, an authentic title to the land was to be made to two trustees to be appointed by the stockholders, and, as soon as practicable, the said town was to be offered for sale in New Orleans, or elsewhere, on the terms and conditions to be agreed on by the stockholders, a majority of whom were to control in all matters touching the sale and management of said property. From this contract we understand that the stockholders, on giving their notes and receiving their certificates, were to become co-proprietors of the *Golden Farm*, laid off as a town; were to appoint trustees to receive a title from the defendant; and were to carry out the intended speculation by selling the property on such terms as they should themselves determine. The evidence shows that the defendant, several years ago, had a plan made of the projected city, laid out into streets, squares and lots. The land appears to be encumbered by a large amount of mortgages, but one witness, who represents himself as well acquainted with the defendant's business, testifies that most of them have been paid, and that he believes that the defendant has it in his power to release any mortgage upon the land in one week. Be this as it may, no trustees has ever been appointed by the stockholders to receive a title to the land, nor has the defendant ever been called upon to execute one. This was clearly a commutative contract; each party had obligations to perform; if the defendant has failed to comply with his, he should have been put *in mora*. Civil Code, arts. 1906 to 1920. But this action is one neither for damages, for a rescission of the contract, nor for its specific performance. It is brought to recover money alleged to have been paid without any consideration. The evidence shows that R. Layton received the consideration which he contemplated to receive he when gave his note, to-wit, a certificate which entitled him to an interest in a tract of land to be conveyed by defendant to two trustees, to be sold in town lots, and to be the object of a speculation out of which a large profit was probably anticipated.

*Judgment affirmed.*